MELVIN ALEXANDER, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.
—469 S.W.2d 521

March 24, 1971.

Certiorari Denied by Supreme Court June 21, 1971.

Dicken E. Kidwell, Murfreesboro, for plaintiff in error.

David M. Pack, Attorney General, C. Hayes Cooney, Assistant Attorney General, Nashville, Guy R. Dotson, District Attorney General, Murfreesboro, for defendant in error.

RUSSELL, J. The plaintiff-in-error, Melvin Alexander, appeals his first degree murder conviction and resultant fifty-five (55) year penitentiary sentence. The victim, J. K. Robinson, was a salesman of storm windows and doors. He disappeared while on a selling trip in rural Rutherford County on January 16, 1969; and three days later his body was found secluded in a wooded area, his head having been battered by rocks. Melvin Alexander was arrested on the day that the body was found, and confessed his part in the brutal robbery-murder. Melvin Alexander, Terry Alexander and Howard King asked a ride of the victim in his automobile; and, on the pretense of directing him to where he could likely sell some storm doors and windows, had him stop at a remote unoccupied house. Plaintiff-in-error grabbed the victim and held him while another struck Mr. Robinson upon the head with a beer bottle. Melvin Alexander then dragged the victim from his car, and the young men proceeded to hit him in the head with rocks until he was dead. Apparently Mr. Robinson begged for his life, but to no avail.

The jury found plaintiff-in-error guilty of first degree murder. He was charged with this offense in a two count indictment, with common law first degree murder charged in the first count, and murder in the perpetration of robbery (statutory first degree) in the second. The jury never specified which count its verdict related to.

A second indictment for robbery was concurrently tried with the murder charge, and resulted also in a jury verdict of guilty. However, the trial judge, apparently upon the premise that the first degree murder conviction was based upon a jury finding of murder committed in the

perpetration of a robbery, dismissed the robbery charge in ruling upon the motion for a new trial.

So, we are dealing only with a first degree murder conviction and a fifty-five (55) year penitentiary sentence.

This record leaves no room for doubt as to Melvin Alexander's guilt. He confessed in detail upon separate occasions, he was seen with the victim, his fingerprint was in the victim's car, he was in joint possession of a sum of money (including a one hundred dollar bill) immediately after the critical time, etc.

The one error assigned and seriously argued is that the victim's widow was permitted to testify that upon the Monday prior to his slaying on Thursday that he had a one hundred dollar bill upon his person. Mrs. Robinson first testified that ''she knew that he had a one hundred dollar bill upon his person on the day that he was killed.'' She related that they paid their bills by cash, and that the one hundred dollar bill was to be used to make a car note payment not yet paid when the murder occurred. Defense counsel recalled Mrs. Robinson, as his only defense witness, and got her to testify that she had not seen the one hundred dollar bill since the Monday before the relevant Thursday. It was counsel's position upon the trial, and his position now, that all of Mrs. Robinson's testimony on this point was incompetent and should be stricken, because she didn't ''know'' that her husband had this money at the time of his death. It is insisted that this is a critical and controlling point; because, it is contended, no robbery is shown independently of the confession, so no corpus delicti is established independently of the confession.

■ All of this can be answered, at the threshold, by simply observing the fact that this objection does not really go to the admissibility of Mrs. Robinson's testimony, but merely to its weight. Certainly her testimony is some evidence that Mr. Robinson still carried the one hundred dollar bill on Thursday. It is circumstantial evidence of that fact. Other circumstantial evidence of the same fact is that these three killers turned up in the unexplained possession of a one hundred dollar bill shortly after they were seen with the victim, and had conversations and transactions with several people in the process of getting the money changed for splitting three ways. And we further note that the property taken by robbery is not specified in the indictment sub judice, and that clearly the proof establishes that the automobile of the victim was taken, as well as an umbrella belonging to his wife. So, it is not essential to the corpus delicti to certainly show that the one hundred dollar bill in question was taken.

■ We might point out, also, that the conviction was for first degree murder, and it could be said that this was the common law offense alleged in the first count, as contrasted with murder in the commission of a robbery charged in the second count. The jury did not specify which count they found guilt upon. Although it is clear that a robbery was committed, there is evidence under which the jury could have found first degree murder outside the scope of the robbery. Supplementing the actual physical evidence, we refer to one of the confessions, in which it was said that the victim, having already been beaten and subdued and while upon his knees, begged the defendant and his accomplices to take his money and

his car, but not to kill him. It could be said that the robbery was then an accomplished fact, and that the deliberate subsequent killing unnecessary to accomplish the robbery was common law first degree murder. It is readily conceivable that one might successfully be robbed, and subsequently murdered for a reason other than the forcible taking of his property.

Clearly, the corpus delicti of first degree murder was circumstantially established; so the confessions as to that crime were properly received.

For all of which we overrule the assignment complaining of the testimony of Mrs. Robinson as to her husband's possession of a hundred dollar bill.

■ Other insistences are made. It is contended that it was illegal to try Melvin Alexander upon an indictment charging both common law and statutory first degree murder; that having these two charges, plus the robbery charge, before the jury prejudiced him by what might be termed the "bad man" approach of the State in charging the Defendant with three different offenses arising out of the same act. Defendant contends that the jury would have a tendency to feel that he must be a particularly bad man since he was charged with so many offenses.

We find this contention to be without merit. The procedure followed in the complained-of respect is lawful and usual, and could hardly have been prejudicial in the context of this case.

■■ The Defendant contends that since he is a Negro that he should have had a jury panel which would at least have allowed him the possibility of being tried by a number of Negroes proportionate to the percentage of Negroes in Rutherford County. The population of Rutherford County is approximately twenty percent Negro, and only three of a jury panel of fifty-nine were Negro.

There was no showing of a systematic exclusion of Negroes from jury service. The contrary was actually shown. Alexander had no Constitutional or other right to a trial before a jury which reflected the racial balance of the community. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

Assignments testing the legal sufficiency of the convicting evidence are overruled. The judgment of the trial court is affirmed.

Oliver and Galbreath, JJ., concur.